Good morning, and may it please the Court, Michael Snock, a Deputy Federal Public Defender appearing on behalf of Appellant John Campbell. Want some water? No, I think I can make it. Well, we'll give you a glass of water. No, I'm fine, Your Honor. Really. That's all right. Have a glass of water whether you want it or not. Whether you want it or not. I think my voice will be the same with or without the water. Oh, because you're making me thirsty. Okay. The sentence in this case accorded to Mr. Campbell was unreasonable because it failed to account for the gross disparity created between his sense and the sense of his co-defendants, Mr. Abbas and Mr. John. By every measure and all accounts, Mr. Campbell was, in the words of the prosecutor, the lowest player in the game. Yet he received the greater sentence. And even had he received the same sentence, it would still have created a gross disparity. Now, that disparity was not apparent when Judge Keller sentenced. Is that correct? Mr. Campbell was sentenced first, so the two sentences of his co-defendants were subsequent. Mr. John's sentence was capped at five years because of his plea agreement. And there was some speculation that he would get something close to what he got. Campbell was sentenced by Keller. Judge Keller. Abbas was sentenced by Motz. Yes. Both Abbas and Tamir John were sentenced by Judge Motz. Isn't there case law that suggests that when co-defendants are sentenced by different judges, co-participants are sentenced by different judges, that we shouldn't necessarily point to the any disparity in sentence because judges are individuals and they come to different conclusions? There's some out-of-circuit case law that suggests that. And, indeed, it would be kind of hard, wouldn't it, in the Central District to find two more different judges than Howard Matz and William Keller? And I think that's precisely the point, Your Honor, that we don't want, and 18 U.S.C. 3553a6 speaks specifically to that principle, that we don't want any unwarranted disparities between defendants convicted of similar crimes with similar backgrounds. And, certainly, a disparity based on the identity of the judge is, in essence, an unwarranted disparity, but that seems to apply in the principle. If we send it back, does it go back to Judge Keller? I think the fairest thing in this case would be to send it to Judge Matz, who sends  I don't know about this other two co-defendants, but I'm not sure how the other two. There's no sufficient record before us to do that, is there? No, I'm not. I'm not. Judge Keller may be kind of tough in sentencing and a generally tough guy who may still think he's a U.S. attorney and not a judge, but there's nothing on this record to indicate. In fact, he was kind of mad at the government for, if you read the sentencing transcript, for what they had for making the deal with the third guy, right? That's correct, Your Honor. And I'm not suggesting that there's any hint of bias in Judge Keller's record. Well, if it were sent back, you could always ask Judge Keller to transfer it to Judge Matz out of fairness, whether he would agree to that or not. That's correct, Your Honor. I have no idea. But it would certainly have to be a voluntary act on his part, because there's no way to send this case to anyone other than Judge Keller. There's no way it would go back. Let me ask you. You have one Eighth Circuit case, which is very similar, in which the person was sentenced first before it was clear it was unfair or the comparison was unfair and then sentenced before a district judge. And they were sentenced before two district judges. And the Eighth Circuit vacated it in any event. Other than that case, do you have any cases that are comparable to this? No. I don't have any other cases where the disparity was great and there weren't two different judges.  Where it doesn't become clear until a later time that the first sentence is unfair in comparison, because it would never come up. You couldn't tell in comparison. But, I mean, this is the only one I've seen in which, at the time of the sentence, there was nothing. The argument didn't exist. The argument arises after the sentence because of the subsequent act of the second judge. But this is the only case in which that circumstance seems to have arisen, and the Eighth Circuit agreed with your position. I think there are certainly statements in other circuits that suggest what Judge Sotomayor said. But I don't have any other cases where the equality between judges is different, although I guess that was the whole point of the Guidelines, was to try to eliminate that. That's correct, Your Honor. That's the whole policy, is that we don't want the sentences to be driven by the identity of the judge. They want to be driven by the circumstances of the offense and the background of the offender. And in this case, if you look at those, because the circumstances of the offense are identical with respect to the offense, now the culpability within that offense is widely disparate, but that only redounds to Mr. Campbell's benefit because he did almost nothing with respect to this offense. When Judge Keller sentenced your client, did he indicate that he thought the more culpable defendants, the other two, would receive sentences of 51 to 63 months, one of them and the other 97 to 102 months? I think there was some discussion that those were the estimated Guideline ranges for the other two defendants. The other two defendants. So then he gave your defendant 48 months, right? That's correct. But then Judge Matz gave the other two defendants, he gave, as to those two, the one that was the least culpable, 21 months, and as to the most culpable, of the three, 41 months. Just the opposite. The sentences are correct, but the most culpable is the one that got the 21. It was his scheme and his plan, and he recruited all the players. And he got most of the money. Okay. All right. Well, you know, that was one of the unfortunate aspects of the sentencing Guidelines, that it tended to reward the one with the most information. So it was you'd had you've probably seen plenty of drug cases where the person at the top of the pyramid gets a much lighter sentence than some of the people down on the street. But, you know, that's the Guidelines. Well, that's also the government's choice in who they decide to make the cooperator. In this case, they decide to make Mr. John the cooperator, which is a little puzzling, given he was his scheme. He may have won the race to the prosecutor's office. Even so, it makes no sense to give him a sentence that is less than half of what Mr. Camel got in this case, given the relative culpability in the scheme. It's just totally unjust. And now that it's before the Court, and given the mandate of 3553A6, avoiding unwarranted sentencing disparities, I think it's incumbent to remedy that injustice. I reserve any. Okay. We hear from the government on that. Yeah, we're going to hear from the government now. Yes, sir. May it please the Court. Matthew Umhofer on behalf of the United States Attorney's Office. What harm would be there to send this back to Judge Keller and let him evaluate Camel's sentence in light of the sentence given the other participants? Well, I think the harm is a larger harm, and the harm is — I mean, he could always say no. He can. And that is true. He can. But I think the larger harm here is what I think Judge Reinhart and yourself, Judge Hopkins, have touched on, which is the fact that there's a subsequent event here that defendant is relying on. It's a subsequent exercise of another district court judge's discretion, under the sentencing guidelines and under Booker, that the defendant is relying on. And that is the lever the defendant is relying on to invalidate his sentence. And so I think we need to think long and hard about whether it's wise to open the case, and at the same time, there's a subsequent event in a case to reopen a case — a sentencing. And that's — But this is different because you've got two judges. And I think it is different because it's — and that's — and I think the other reason here — You've got two different judges here. And I think the other reason here — You've got Judge Matz, who was a fierce prosecutor. You know that. Yes. Yes, I do, Your Honor. It was a fierce judge, too. What? He was a fierce judge, too. Well, I don't know about that. I lost all my hair as a result of that case, actually. So — But, you know, you save money with a barbershop, don't you? I certainly do. I certainly do. I think — I think the other — Did you ever ask the barber why he charges you the regular fee? I'd have to ask myself because I'm my own barber, unfortunately, and I'm sure it shows. The answer is that he's not charging you for a haircut. He's charging you for a finder's fee. I'll have to use that, Your Honor. I know. I think the other harm here, to address your question, Judge Hawkins, is that I think we're invading the discretion that is afforded to district court judges if we simply reverse and remand or vacate and remand a sentence based on another judge's exercise of their discretion. I think that this Court has called for deference. Well, this is a little bit different, right? Because at Campbell's sentencing, the government represented that the really bad guy was going to get in the neighborhood of 100 months or was up for about 100 months. That's — And that's what we pushed for. Those were the numbers that were tossed around. Yes. And a boss was going to get in the neighborhood of 80, right? Correct. And in light of that, with that sort of in front of him, who is no soft sentencer at all, goes all the way down to 48 months. So that was right at the bottom, wasn't it, of the guideline range? That was actually below the guideline range. He actually went below and exercised his discretion there. And so I think — but I think the difference here is — So why isn't this just like sort of an amyline remand? Send it back, and if he still thinks 48 months is good as gold compared to what these other people got, fine. Because I think it assumes that Judge Matt set the correct baseline, and I think it opens up the issue of what is a reasonable — It assumes that there's a mistake of fact, basically, that Judge Keller was interested in facts, and he based his sentence on facts, even though it was a prediction. But, I mean, is something going to happen in the future? He believed something was going to happen in the future, and it turns out that was incorrect. And he premised his sentence on that. Now, why wouldn't it be fair to say to him, you know, you made a sentence thinking this was going to be the fact. As it turns out it's not, do you still want to give the same sentence? But I think it suggests that this Court must vacate a sentence when another judge makes a mistake. And I think, in all fairness — No, it doesn't suggest anything. I think it does. I think what it does is it takes Judge Matt's case, which — Judge Matt's decision, which, while reasonable, was on the low end of reasonableness. He, when Keller sentenced Mr. Campbell, he had in mind what the U.S. attorney told him the sentences would be and the others. He thought, well, all right, I'll give him a much lighter sentence. He gave him 48 months, but it turned out differently.  But things went awry, and the predictions didn't pan out. So what's wrong with sending it back to him and say, take another look at it? Because it undermines — He doesn't have to look at it if he doesn't want to. Because I think it undermines the finality of the sentence. Oh, it doesn't undermine anything. And I wouldn't — and I'd also suggest — You know, it's — the only thing it would undermine if we don't send it back is fairness. That's the only thing it would undermine. Let's hear your best argument. Pretend that there's one judge up here, and it's Keller, and you're back on sentencing. What's your best argument to defend the Campbell sentence in light of what Abbas and the other fellow got? Because you, Judge Keller, hewed to the guidelines, and Judge Matt's did not. And the guidelines — and if we're looking at 3553a6 — He went below the guidelines. He went to guidelines. But he hewed much more closely to the guidelines than Judge Matt's did. He went below it. He went below it. You came closer to hewing to the guidelines. He was very disciplined. And if you look at what Judge Matt's did, he was — Judge Keller was much more disciplined. Judge Matt's said, 1.6 million? I don't buy it. I'm going to order restitution in that amount, but I'm not going to hold them responsible for that. I'm not even going to make guidelines calculations. I'm not going to make guidelines findings. That's what Judge Matt's did. I'm going to tell Judge Keller, Judge Keller, this is what you did. You went through the guidelines piece by piece. You gave the defendant a lot of credit in places that you thought appropriate and you didn't in others. You know what you're going to do? You're going to get back and you're going to say, Judge Keller, it would really be fair to give this guy a lower sentence. I don't think I am because I think that Judge Matt's — We have much more confidence in you. Thank you. And let me make something clear here. I'm not comfortable — If you do what Judge Reinhart says, your hair is going to start growing. A lot of it is caused by, you know, guilty conscience, stress. I'm not comfortable — and I want to make something clear. And I want to make something clear. And trial counsel, Mr. Iverson, is in the courtroom today, and I want to make something clear that I made clear to him. I'm not comfortable with this result at the end of the day. I'm not comfortable with the fact that Mr. Campbell got a higher sentence. That's the way you want to start your presentation to Keller. That's the way I want to start it. All right. All right. Here we go. All right. I'm off to a better start. Because guess what? You're going to get to do it. Now, if you want to — you've got 13 minutes left. If you want to spend it, my guess is you're going to get the chance to do that. Well, thank you. I appreciate that. I'd like to just make a few more points along those lines, if I could, to just nudge you a little bit. 3553A6, every court that's looked at this, every circuit that's talked to this, has said it's a national disparity that you're looking for. It's not defendant to defendant. The First, the Second, the Third, the Fourth, the Seventh, and the Tenth. Every single one of them has said — Not the Eighth. We don't look — I'm sorry? Not the Eighth. Not the Eighth. Now, I think it's interesting. The Eighth Circuit case that I think you're talking about is United States v. Lazenby. Now, that was a government appeal, and I think it makes the case perfectly here. It was a government appeal, and the government appeal — The first person got a sentence that was too light. A one-year sentence, and then the other person got a guideline sentence. Right. And so I think what we have here, if you're going to draw analogies to that case, what we have here is the person who got the too-light sentence, Mr. Abbas. Okay? He's the too-light sentence here. And then you've got the person who got the guideline sentence, which is Mr. Campbell. Now, what the Eighth Circuit did there was that they said, okay, we're going to vacate both sentences and send them both back, because we think this too-light sentence was a mistake. Now, I'm — I wouldn't shed tears. You didn't appeal the other sentence here. That's the difference. Because — Because it must be fair. Well, I mean, but the defendant — the other defendant didn't appeal their sentence in that case either. And so you have the same situation here. Now, I wouldn't shed a tear if this Court would have — I wouldn't shed many tears, let me put it that way, if this Court were to vacate both sentences and send them back, because I think that's what the Eighth Circuit did in that case. But here what you have is you have a judge who in — who cued to the guidelines and therefore kept Mr. Campbell's sentence in line with national uniformity. And then what he — and then what Judge Matz did was he made it way out of whack with national uniformity. But, see, unfortunately, we don't have that problem now. You've got — because Judge Matz's sentence isn't on appeal. That's — that's true. But the same was true in Lazenby. And so I think that under the circumstances — It sounds like an activist court to me. Well, I wouldn't — and I'm not — I'm not inviting that. What I am making the point is that what we need to do is we need to look at what the reasonable sentence — what the most reasonable sentence was here. And the most reasonable sentence from a disparity standpoint is Mr. Campbell's sentence, because that's — that was in — that was in keeping with the national uniformity here. Mr. Abbas's sentence was not. And I think that if we take A-6 and we transform it into the only factor, and I think that's what this appeal does, is transform it — transforms it into the only factor that matters, and reverse solely on that factor without looking at any other factors, I think we're opening up a little bit of a Pandora's box there. But I'll move on. Sophisticated — You want to save me 10 minutes for the next case, though. Oh, I would — I would be happy to as well. I've got 10 more seconds here. So unless you have any questions on the sophisticated means or acceptance of responsibility, I'll sit down. Thank you.  All right. Next. Abbas. Well, sit there. You know, it won't hurt you. You might be enjoying this. Good morning, Your Honors. May it please the Court. My name is Laura Crawford. I represent the appellant Asif Abbas. I would like to reserve two minutes for rebuttal, and I'm going to try to be as succinct as possible and get to the crux of my arguments. So we'll start with Count 7, which was the only count of wire fraud that Mr. Abbas was convicted of. The reason why this count cannot be sustained is because one key element, the element of material reliance on the credit application, there was no testimony as to that. There was no representative from Digi-Key, the victim in that count, as to whether they considered the credit application, whether they relied on it in any way, whether they checked other credit references, whether they checked Dun and Bradstreet, whether they checked the bank references. There was only the testimony of Agent Nugent from the IRS who explained what was shown on the document, but that one key element, the material, whether that credit application was material, there was no testimony as to that. There was no witness provided to even address that issue, and there certainly was no opportunity to cross-examine anyone from Digi-Key on that issue. For that reason, Count 7 for wire fraud cannot be sustained. Now, before I move on to the other counts that the Court has. Was a credit reference sent to Digi-Key? The only evidence that it was sent is a fax heading which says it appears to have been sent from a fax machine that says A.C.T. as the sender. That was it. And that was before the jury? That was one of the government's exhibits. Admitted into evidence? Yes, admitted into evidence. Your argument is the jury couldn't infer from that that this credit reference was sent to Digi-Key? They could infer that it was sent, but just because it was sent does not mean that Digi-Key materially relied upon it. And that is important because there were other representatives from victim companies that testified on the other wire fraud counts. None of those counts resulted in a conviction. Cross-examination brought out the fact that they also relied on Dun & Bradstreet. They also relied on other credit references within the industry. They also relied on the credit application itself. And they also relied on bank accounts. So it's reasonable to infer that the jury was paying attention when those victims testified and found out that there wasn't a material reliance on the credit applications in those cases. So how they found a material reliance in this case when there was an absence of testimony on that element is really beyond me. Does the Court have any other questions with regard to that count? Your client testified, right? Yes. And he acknowledged that he had sent the credit reference to Digi-Key? He acknowledged in a general sense that he had sent credit references. Yes, he did. Okay. Okay. Okay. Moving on to the two counts of basically lying to the IRS. That would be the false statements under Section 1001, and that would be counts 30 and 31. Basically, this is another issue of a lack of evidence as to the materiality of the statements that were made. Agent Nugent testified that when Abbas was initially questioned, he said that he had never gone to Jan's residence and he had never picked up merchandise from Jan. A little bit later in the same day at a subsequent interview, Jan clarified that and said, I thought you meant did I regularly pick up merchandise? No, I didn't, but there was one occasion when I did go pick up merchandise. I believe it was telephone equipment that was owed to me. And when I found out that Tamer Jan had left the country, yes, I did go to his residence or business, were made when the agents already had an investigation going. They already knew about Mr. Abbas's involvement. That's when they confronted him the second time and said, well, what if we found your fingerprints at Jan's residence? So those statements did not materially affect Agent Nugent's investigation. He was already investigating Mr. Abbas. They didn't prevent him from continuing the investigation. They didn't prevent him from going to Mr. Abbas's business and conducting a further investigation of obtaining documents, of questioning him further. They didn't mislead him in any way. And there was no testimony from the agent on direct as to what the effect of these two statements were on his investigation. There was no testimony as to whether he relied on them in any way or if they were material. And even the court below had struggled with letting these two counts go to the jury at the Rule 29 motion, because the court below didn't see that materiality had been demonstrated in the people's case-in-chief. And I believe it was error to let these two counts go to the jury. And I believe since they did go to the jury, there wasn't any evidence regarding the materiality of these statements that the jury could have inferred to find a conviction on those two counts. Does the Court have questions with regard to Counts 30 and 31? I don't. Okay. That brings me to my final issue. The ineffective assistance of counsel. Now, I believe the threshold question is whether there is an adequate record before the Court to even rule on this, because generally speaking, it's done by a writ of habeas corpus. It's a collateral attack. You have an expanded record where perhaps the defense attorney can explain what his strategy was or wasn't. I believe in this case you do have enough in front of you on direct appeal to determine whether there was ineffective assistance of counsel in this particular case, and not just because counsel stipulated to all of the government's exhibits coming in. More importantly, because he didn't object at all during the cross-examination of Agent Nugent. And I believe that even frustrated the trial court to the extent where he called counsel a sidebar and said, you've missed at least a hundred objections. Court isn't here to make your objections for you. You're letting the prosecution, I believe he said, dance all over the landscape. That's not a strategic decision. That is failing to do your job in making objections and preserving them for the record. And I think that is why the Court has enough before it to make a determination in that regard. If the Court disagrees, then, of course, collateral attack. Does the Court have any questions for me on that issue? No? All right. Thank you very much. Thank you, counsel. Very nice. Round two. Matthew Omoffer for the U.S. I'm a bit bewildered by counsel's first argument on count seven because it wasn't made in the brief. The argument made in the brief was that there was no evidence that the fax was sent to DigiKey. And so I looked through the brief just a second ago just to make sure I hadn't missed it, but this is a new argument that's being presented at oral argument, which is that the government failed to prove materiality as to that count. Now, we did. We proved materiality by calling numerous different victim companies who all testified that they relied heavily on these credit references. I thought her point, putting aside for the moment whether it's raised in the briefs or not, and we'll determine that by rereading the briefs, but I thought her point on that was that no one from DigiKey appeared at trial to say, yeah, we got this credit reference, and we relied on its truth and accuracy in extending credit. And I think that your question, whether they could infer from the fax in the credit reference and also from the fact that we called in five different victim companies we didn't call in all 47. We would have been there for quite some time. We called in five example victim companies to testify as to what they typically relied on. And I think that that's sufficient for a jury, certainly sufficient for a rational trial. In fact, to find that if all of these other victim companies relied on credit references in making their determination as to whether to extend credit to this bust-out company, that DigiKey was an element. I'm sorry? Is this an element of the offense? The materiality, I think, is the of the lie is, I think, an element of the offense. And I think that we've presented enough. But the reliance by the credit agency is not. I apologize. The reliance is because that makes it material, I think. And so I think that that was our argument at trial was that by putting forward these credit references that a person would reasonably rely on. Let's assume this was a single count indictment and it only contained, is it number seven, count seven that related to DigiKey? Yes. That that's the only, it's a single count indictment and you're up on that and you put in tons of evidence that the credit reference that was faxed, in fact, is rife with fraud and misstatement. Yes. And that, in fact, was sent to DigiKey, but no one from DigiKey appears to say they relied on it. I think if you. Where are you? I'm at the same place because I've called a number of other companies. No, no, no. You're just trying the one count. If I'm trying the one count as to DigiKey, I think I'm still in the same place, which is there's a reasonable inference to be taken from the credit reference and the fact that it is rife with lies that it was actually, those lies were actually material because they go straight to do they have good credit. I mean, these lies were, these guys have great credit. I want to be clear. In your opinion, it's enough to establish that the faxed credit reference was materially inaccurate just on its own. You don't have to put on a witness from the company extending credit to say they relied on it. I think that's correct. I think that is correct. And so as to materiality, I think we're well over the hump because I don't think we are in that situation. We did have numerous other companies, and that's why we did it that way, was we didn't want to call in every single company, all 47 companies that were involved in the fraud, so we called in a targeted group of companies. As to defendant did not, or appellant did not reference its conspiracy argument, but the conspiracy argument rests on the invalidity, rises or falls on the invalidity of the wire count fraud. So if you find the wire count fraud is valid, conspiracy stays. And even if you do find the wire count invalid, United States v. Pruitt, even if the substantive count falls, the conspiracy charge can remain and should remain in this case because there's plenty of evidence of conspiracy. As to the false statement, I noted appellant counsel's argument repeatedly saying it did not affect his investigation. He did not testify that it actually affected his investigation. Well, we don't have to show that. This Court has held again and again and again that you don't actually have to prove actual influence on the agency. All you have to prove is propensity to influence the agency or that something is calculated to influence the agency. And there's no question that his lies about he's putting distance between him and the other fraudster, Mr. Jan. And he's saying, I've never been to his house. I've never called him. I've never been to his business. And that's material because at the point at which the interview, apparently my daughter does not agree with the argument I'm making. You're waking up. Is that your baby? That is my baby, Your Honor. She can stay here. She's sick of hearing me. I apologize for you. Was there a question? No need to apologize. No need to apologize. We think it's wonderful. I do, too. You have such a soothing voice. I'm lulling you to sleep, aren't I? Yeah. It's very soothing. And so all you had to do is prove that it was calculated. And we didn't need to. And in that case, you don't need testimony from the agent because it's an objective test. It's not a subjective test. So if the agent testifies, yeah, it affected my investigation or could have, that doesn't get you there because in the United States versus Gaudin, the Supreme Court said that question is a mixed legal and fact question. And so you've got all the facts there, which is he's in an investigation. All he knows is that a boss has done tons of business with Jan. He doesn't know if a boss knows that all this business is fraudulent or that the stuff he's buying from Jan is fraudulent. And so under those circumstances, it's very clear that the agent was still learning about this offense. And those lies distancing himself, Mr. Abbas distancing himself from Jan, could have led the agent, certainly were calculated to lead the agent to believe that there was a distance between them, and therefore Mr. Abbas didn't really know what was going on. And so I think that there was plenty of evidence for the jury to conclude that these statements were false. Finally, ineffective assistive counsel. I don't think the record is ready yet, and here's why. First of all, I don't think the record is ready on the appellant's side. The appellant has pointed to no single piece of evidence that came in that actually that should not have come in. Simply says, writ large, he stipulated to the admissibility of the exhibits. By the way, that stipulation was reciprocal, so the defense also got in all of his exhibits and used them extensively at trial. And also didn't do a great job of cross-examining and or objecting to Agent Nugent's testimony. Everything that Agent Nugent testified to was also testified to by Jan. He testified as far as the falsehood about the particular statements. Now, this issue of Judge Matt stopping the trial and asking defense counsel what's going on, and I think it's a little misleading. What happened here was appellant counsel said that Agent — that Judge Matt stopped the trial during Agent Nugent's testimony. He did not. He stopped the testimony — stopped the trial during Jan's testimony. And he said, I've got a problem with the fact that you're not objecting to foundations — to the lack of foundation as to Mr. Jan. And that happened much later in the trial. Excuse me. Yes, much later in the trial. As to Mr. Nugent, the judge expressed no concerns about how the questioning was going and about whether counsel was being effective in his representation during Agent Nugent's testimony. And so I — but just to make it clear, first of all, we don't have a clear, precise indication of precisely the ways in which counsel was ineffective. And second of all, we don't have counsel's explanation. We've got one line from him in which he says, I didn't want to be obstructionist. But I think that in order to make the record here that a record that this Court can really make its decisions on, we need a lot more in the way of statements from defense counsel giving an opportunity to explain what he was doing and what his strategy was. So unless there are any further questions, I'll submit. Thank you. Thank you, Your Honors. Ms. Butler. Thank you, Your Honors. Very, very briefly, my argument with regard to the wire fraud account shows up in my reply brief on pages 6 and 7, where the issue of materiality is brought up and discussed. And I did fax another copy over to Mr. Umhoffer last week at his request, so I do believe that he has seen that. With regard to the ineffective assistance of counsel — Ordinarily, you understand that's not sufficient. He did get it served originally. I'm not talking about whether it was served or not. Ordinarily, when we say raise it, from your point of view, that means raise it in the blue brief, not in the reply. I believe it's a one-liner in the blue brief, Your Honor. My emphasis on the initial brief was on whether it was actually faxed or could have been mailed. But then I realized that really the focus should be on the question of was it material. So thank you, Your Honor. With regard to whether the failure to object and the cross-examination was ineffective, I don't think it matters whether it was during Agent Nugent's testimony or during Tamer Jan's testimony. If counsel fell below the standard during anybody's testimony, it could constitute ineffective assistance of counsel. And with regard to the false statements, if those false statements had negatively affected Agent Nugent's investigation, then I don't — it doesn't follow that then he would have had a subsequent interview with the defendant the very same day, done follow-up investigation, and pointed out to him, what if we found your fingerprints? Isn't it true that you were really there? So it really didn't affect his investigation at all. It wasn't material to his investigation. And I will submit on that. Thank you. Okay. Thank you. Did you want to bring your daughter in and have her admitted to the ninth circuit? That would be one step ahead of you. Groundbreaking. Groundbreaking, yeah. She's probably eating lunch now, so. Well, okay. We don't want to disturb that. All right. Thank you very much. And this court will recess until 9 a.m. tomorrow morning.
judges: Pregerson, Reinhardt, Hawkins